UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: | |
| Michelle Migdon (By Telephone) Linda Kornfeld | Karen Bizzini Winnie Louie | |

Proceedings: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENSE COSTS (dkt. 78, filed October 18, 2013)

DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DUTY TO INDEMNIFY (dkt. 94, filed November 1, 2013)

**I. INTRODUCTION**

On March 7, 2013, plaintiff Signal Products, Inc. ("Signal"), filed a complaint against American Zurich Insurance Company ("Zurich") and American Guarantee and Liability Insurance Company ("American Guarantee").[1] Signal avers that it purchased commercial general liability insurance policies from Zurich and American Guarantee. Compl. ¶ 11. Signal's complaint asserts that Zurich and American Guarantee breached their duty to indemnify for Signal's liability in a trademark action recently tried to judgment in the United States District Court for the Southern District of New York. Id. ¶¶ 68-74. Signal's complaint also asserts that Zurich and American Guarantee breached their duty to defend by failing to pay Signal's defense costs. Id. ¶¶ 75-81. Lastly, Signal's complaint seeks (1) to recover for tortious breach of the implied covenant of good faith and fair dealing, id. ¶¶ 82-87, and (2) declaratory relief, id. ¶¶ 88-91. On

---

[1] Signal filed its complaint in the Northern District of California. On June 7, 2013, Judge Edward Chen granted Zurich and American Guarantee's motion to transfer the case to the Central District of California. Dkt. 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

April 11, 2013, Zurich and American Guarantee answered and filed counterclaims. Dkts. 22, 23.

On October 18, 2013, Signal filed a motion for partial summary judgment on its claim that Zurich and American Guarantee breached their duty to defend. Dkt. 78. On November 4, 2013, Zurich and American Guarantee filed their opposition, dkt. 111, and on November 25, 2013, Signal filed its reply, dkt. 136.

On November 1, 2013, Zurich and American Guarantee filed a motion for partial summary judgment on Signal's claim that they breached their duty to indemnify. Dkt. 94. On November 13, 2013, Signal filed its opposition, dkt. 114, and on November 25, 2013, Zurich and American Guarantee filed their reply, dkt. 135. On December 19, 2013, the Court held a hearing. After considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Insurance Policies

Plaintiff Signal is a fashion apparel corporation with its principal place of business in Los Angeles, California. Compl. ¶ 4. Defendants Zurich and American Guarantee are both insurance companies with their principal places of business in Schaumburg, Illinois. Id. ¶ 5. Beginning in 2003, both Zurich and American Guarantee sold insurance policies to Signal. Zurich sold seven commercial general liability policies to Signal, with policy periods covering January 29, 2003, to January 29, 2010. Defendants' Statement of Uncontroverted Material Facts ("DSUMF") ¶ 1; Signal's Statement of Genuine Disputes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

O

("SSGD") ¶ 1.[2] These commercial general liability policies provide personal and advertising injury liability coverage, as set forth below:

> COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY
>
> 1. Insuring Agreement
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. . . .

DSUMF ¶ 3; SSGD ¶ 3.

Similarly, American Guarantee sold seven umbrella liability policies to Signal, with policy periods covering January 29, 2003, to January 29, 2010.[3] DSUMF ¶ 2;

---

[2] These policies are numbered CPO 2817167-00 (policy period of January 29, 2003 to January 29, 2004), CPO 2817167-01 (policy period of January 29, 2004 to January 29, 2005), CPO 2817167-02 (policy period of January 29, 2005 to January 29, 2006), CPO 2817167-03 (policy period of January 29, 2006 to January 29, 2007), CPO 2817167-04 (policy period of January 29, 2007 to January 29, 2008), CPO 2817167-05 (policy period of January 29, 2008 to January 29, 2009), and CPO 2817167-06 (policy period of January 29, 2009 to January 29, 2010). DSUMF ¶ 1; SSGD ¶ 1.

[3] These umbrella policies are numbered UMB 9310005-00 (policy period of January 29, 2003 to January 29, 2004), UMB 9310005-01 (policy period of January 29, 2004 to January 29, 2005), UMB 9310005-02 (policy period of January 29, 2005 to January 29, 2006), UMB 9310005-03 (policy period of January 29, 2006 to January 29, 2007), UMB 9310005-04 (policy period of January 29, 2007 to January 29, 2008), UMB 9310005-05 (policy period January of 29, 2008 to January 29, 2009), and UMB 9310005-06 (policy period of January 29, 2009 to January 29, 2010). DSUMF ¶ 2; SSGD ¶ 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

SSGD ¶ 2. These umbrella policies also provide personal and adverstising injury liability coverage:

> Under Coverage B, we will pay on behalf of the insured . . . damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of . . . personal and advertising injury covered by this insurance . . . . Coverage B will not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of underlying insurance.

DSUMF ¶ 5; SSGD ¶ 5.

    **B. The Gucci Action**[4]

Signal licenses intellectual property from Guess?, Inc. ("Guess") in connection with its production and sale of fashion products. On May 6, 2009, Gucci America, Inc. ("Gucci") filed a lawsuit against Guess alleging that Guess's fashion products infringed Gucci's trade dress, (the "Gucci action"). On August 13, 2009, Gucci amended its complaint to add Signal and other Guess licensees as co-defendants. With respect to Signal, Gucci alleged that certain Signal handbags and luggage used a design known as the "Quattro G Pattern executed in brown/beige colorways." Gucci asserted that these products infringed on a distinctive Gucci trade dress known as the "Diamond Motif Trade Dress."

The Gucci Action proceeded to bench trial in March 2012. On June 18, 2012, the Gucci court issued an Amended Opinion and Order, Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 215 (S.D.N.Y. 2012) (the "Gucci Order"). DSUMF ¶ 7; SSGD ¶ 7. In this order, the Gucci court found, among other things, that Signal "intentionally and wilfully copied" the "Quattro G Pattern executed in brown/beige colorways" from Gucci's "Diamond Motif Trade Dress." Gucci Order at 254. Accordingly, the Gucci

---

[4] The facts described in this section are in large part taken from the order in the Gucci action, Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 215 (S.D.N.Y. 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

court awarded Gucci an accounting of Signal's profits from the infringing products, which totaled $1,834,503. Id. Signal now seeks indemnification under its Zurich and American Guarantee insurance policies, along with defense costs incurred defending the Gucci action. Compl. ¶¶ 68-81.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

## IV. DISCUSSION

### A. Zurich and American Guarantee's Motion for Partial Summary Judgment as to the Duty to Indemnify

Zurich and American Guarantee seek partial summary judgment that they are not required to indemnify Signal's liability in the Gucci action. Zurich and American Guarantee argue that summary judgment is warranted because the Gucci court held Signal liable for intentionally infringing Gucci's trade dress. Signal's insurance policies expressly exclude coverage for "personal and advertising injury" caused by intentional misconduct. The Zurich policies, for instance, state:

> 2. Exclusions
>
> This insurance does not apply to:
>
>> a. Knowing Violation Of Rights Of Another
>>
>> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury" . . . .

DSUMF ¶ 4; SSGD ¶ 4. Similarly, the American Guarantee policies state:

> Section IV. EXCLUSIONS
>
> * * *
>
> C. Under Coverage B this policy does not apply to:
>
> * * *

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

Personal and advertising injury:

> a. Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury . . . .

DSUMF ¶ 6; SSGD ¶ 6. Zurich and American Guarantee argue that these exclusions preclude indemnification of Signal's damages in the Gucci action. Zurich and American Guarantee also argue that indemnification is similarly precluded by California Insurance Code § 533, which provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . . ." Again, Zurich and American Guarantee argue that Signal's damages in the Gucci action were a "loss caused by the wilful act of" Signal—namely, intentionally infringing Gucci's trade dress. Zurich and American Guarantee contend that, under either the provisions of the insurance policies or Cal. Ins. Code § 533, Signal's liability in the Gucci action is excluded from coverage.[5]

In response, Signal argues that neither the contractual exclusion nor Cal. Ins. Code § 533 bars coverage because it did not intentionally infringe Gucci's rights. In support of this argument, Signal relies on the Gucci Order itself, which Signal contends did not make a finding that Signal acted intentionally. The only disputed facts in Signal's Statement of Genuine Disputes pertain to Zurich and American Guarantee's characterization of the Gucci Order. See SSGD ¶¶ 8-21. All other facts, including those relating to the contractual language of the insurance policies, are undisputed. Id. ¶¶ 1-7.

---

[5] Zurich and American Guarantee argue in the alternative that they owe no duty to indemnify Signal because the Gucci court ordered a disgorgement of Signal's profits, rather than awarding damages. Zurich and American Guarantee maintain that this restitutionary relief does not constitute insurable "damages" under the insurance policies. See, e.g., Bank of the W. v. Superior Court, 2 Cal. 4th 1254, 1266 (1992) ("It is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award "damages" as that term is used in insurance policies."). In light of the conclusions reached herein, the Court declines to address this alternative argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

After reviewing the Gucci Order, the Court determines that the Gucci court found that Signal acted intentionally when it copied Gucci's Diamond Motif Trade Dress. In particular, the Gucci court explicitly "conclude[d] that Defendants"—a term the Gucci Order previously defined to include Signal, see Gucci Order at 215—"intentionally and willfully copied the Quattro G Pattern executed in brown/beige colorways from the Diamond Motif Trade Dress." Gucci Order at 254; see also id. at 202 ("Defendants intentionally infringed on the Diamond Motif Trade Dress by using the Quattro G Pattern in brown colorways . . . ."). With respect to Signal specifically, the Gucci court made several findings of fact in support of its conclusion that Signal acted intentionally:

- "The evidence also shows that Guess and its licensees attempted to replicate other features of the Gucci fabric. . . . E-mail records show that Signal was attempting to copy the Gucci brown/beige color scheme, of which Jason Rimokh—CEO of Signal—testified that he was enamored." Id. at 227.

- "[Marc Fisher Footwear] tried to replicate other Gucci colors on several occasions in 2008, while both Signal and [Marc Fisher Footwear] attempted to mimic coatings used on Gucci fabrics." Id.

- "The evidence also shows that a fabric supplier was working on an embossed fabric for Signal that was based on a Gucci embossing in 2007. [Signal's Creative Director Suesan] Faulkner also sent that supplier an embossed Gucci fabric for use in developing an embossed Quattro G Pattern in 2008." Id. at 227 n.116.

In addition to these direct findings of willful conduct, the remedies ordered by the Gucci court also reflect a finding of willful misconduct. The Gucci court found Gucci's evidence of actual damage to its brand "highly speculative," and therefore concluded that Gucci was not entitled to actual damages. Id. at 254. Despite this, the Gucci court nonetheless found that Gucci was entitled to an accounting of profits from Signal and its co-defendants. In reaching this conclusion, the Gucci court relied on George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1540 (2d Cir. 1992), which the Gucci court cited for the proposition that "[a] plaintiff may also be entitled to monetary relief in the form of an accounting of profits—as distinct from actual damages—if the infringer acted with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

O

'willful deceptiveness.'" Gucci Order at 243.[6] Under this standard, the Gucci court found that, because "Defendants intentionally and willfully copied the Quattro G Pattern," id. at 254, Gucci could receive an accounting from the defendants. In particular, the Gucci court found that Signal's profits from the infringing products totaled $1,834,503, and that Gucci was entitled to receive these profits. Id. at 255. The Gucci Court's decision to order a disgorgement of profits further supports the conclusion that the Gucci court found Signal liable for intentional infringement.

     Signal advances several arguments for why the Gucci Order does not settle the question of Signal's willfulness. The Court considers each of these arguments in turn. First, Signal argues that a finding of trademark infringement under the Lanham Act does not require a finding of intentional conduct. Signal is of course correct that the Lanham act is generally a strict liability statute. See 15 U.S.C. § 1125(a). Accordingly, a simple finding of infringement does not compel an inference that the infringer acted willfully. As discussed above, however, the Gucci court's conclusions went beyond a simple finding of infringement. Instead, the Gucci court made specific factual findings that Signal and its codefendants acted intentionally, and relied on this conclusion in ordering Signal to disgorge its profits.

     The cases cited by Signal, which all bear on whether a finding of liability compels a finding of intent, are therefore inapposite. In CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71 (2d Cir. 2013), for example, the Second Circuit held that a trademark claim was not necessarily excluded from coverage because the third-party plaintiff's

---

[6] Signal argues that Basch is no longer good law in the Second Circuit, and cites several district court cases finding that a finding of willfulness is not required to order an account of profits for trademark infringement. See, e.g., Chanel, Inc. v. Veronique Idea Corp., 795 F. Supp. 2d 262, 268 (S.D.N.Y. 2011); Nike, Inc. v. Top Brand Co. Ltd., 2005 WL 1654859 at *9-10 (S.D.N.Y. July 13, 2005). Even assuming that Signal correctly characterizes the law in the Second Circuit, this argument misses the mark. The issue in this case is whether Signal's liability arises from intentional conduct, not whether Gucci is entitled to an accounting of profits. Even if the Gucci court relied on the incorrect standard in ordering an accounting, the fact that the Gucci court ordered an accounting of profits under that standard nonetheless reflects a finding of willfulness.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

"Lanham Act section 43(a) claim did not require it to prove that CGS intended to infringe on its trademark, as such a claim does 'not require proof of intent to deceive.'" Id. at 83 (quoting Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 189 (2d Cir.1980)). Similarly, in Acuity v. Ross Glove Co., 344 Wis. 2d 29, 47 (2012), the Wisconsin Court of Appeals found that a knowing-violation exclusion did not apply because the third-party plaintiff sought "to hold [the insured] liable for trade dress infringement without any allegation, much less any required showing, of a knowing violation." Here, by contrast, this Court's finding of intentionality turns not on a general allegation of trademark infringement, but instead on the detailed and specific factual findings made by the Gucci court.

      Second, Signal argues that the Gucci court did not specifically find that Signal, as opposed to its co-defendants, intentionally infringed Gucci's trade dress. In particular, the vast majority of the Gucci court's references to intentional conduct state that the "Defendants" collectively intended to copy Gucci trade dress. See, e.g., Gucci Order at 254 ("Defendants intentionally infringed on the Diamond Motif Trade Dress by using the Quattro G Pattern in brown colorways . . . ."). Signal stresses that the Gucci Order never makes a separate finding that Signal acted intentionally. Instead, the Gucci Order only makes three specific findings—all three of which are quoted supra—about Signal's intent, or lack thereof. Signal contends these three isolated findings are insufficient to support a conclusion that it acted intentionally.

      The Court finds this argument unpersuasive. The Gucci Order expressly defined the term "Defendants" to include Signal. See Gucci Order at 215  As such, when the Gucci Order states that "Defendants" intentionally infringed Gucci's trade dress, see e.g., id. at 254, the order is, by definition, finding that Signal intentionally infringed. Moreover, the Gucci Order does not use the collective "Defendants" indiscriminately. When the Gucci Order discusses conclusions that apply to some, but not all of the defendants, it individually identifies those specific defendants by name. For example, when summarizing the Gucci court's dilution conclusions, the Gucci Order distinguishes between "Defendants" collectively, and individual defendants Marc Fisher Footwear and Guess. See Gucci Order at 253. The term "Defendants," as used by the Gucci Order, thus encompasses Signal. Nor does Signal cite any authority suggesting that Gucci Order must expressly use the word "Signal" to constitute a finding that Signal acted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

intentionally. As such, the Court is unpersuaded by Signal's argument that the Gucci court did not specifically find intentional infringement.

Lastly, Signal argues that "even if Signal intended to copy Gucci's trade dress, that would not establish a knowing violation triggering the exclusion, because copying of techniques and colors in the public domain is a generally accepted practice in the fashion industry." Signal's Opp. at 12. So far as the Court is able to discern, this argument appears to contend that the standard for wilfulness applied by the Gucci court is distinct from the standard for wilfulness applicable under the insurance policy. As support for this contention, Signal cites State Farm Fire & Cas. Co. v. King Sports, Inc., 827 F. Supp. 2d 1364 (N.D. Ga. 2011), which held that testimony that the insured knew "it was selling imitation . . . merchandise" did not "definitively show that [the insured] knew that its actions would result in an advertising injury." Id. at 1371.

Signal's reliance on State Farm is misplaced, however, because that case discussed whether the isolated testimony of an insured's agent was sufficient to show as a matter of law that the insured acted intentionally. See id. ("This wonderfully imprecise testimony does not support State Farm's contention that as a matter of law King Sports knew that its actions of selling infringing products would result in a violation of Cleveland Golf's trademark rights."). State Farm is thus distinguishable from this case, where, as discussed above, the Gucci court made repeated and detailed findings regarding Signal's wilfulness. Moreover, to the extent that Signal is arguing that it did not intend to violate Gucci's rights "because copying of techniques and colors in the public domain is a generally accepted practice in the fashion industry," Signal is attempting to undermine the substance of the Gucci court's findings. But Signal had a "full and fair opportunity to litigate" these issues in the Gucci action, and is thus barred from relitigating them here. See Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4423 (2d ed.).

Accordingly, the Court determines that Signal's liability in the Gucci action arose from wilful misconduct. As such, Signal's liability falls within the "Knowing Violation" exclusions set forth in Signal's insurance policies. When Signal intentionally copied Gucci trade dress—including "attempting to copy the Gucci brown/beige color scheme" and seeking to "mimic coatings used on Gucci fabrics", Gucci Order at 227—the resulting infringement was "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another." DSUMF ¶ 4; SSGD ¶ 4; see

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

also DSUMF ¶ 6; SSGD ¶ 6. The Court therefore finds that there are no genuine issues of material fact as to whether indemnification is precluded by the language of Signal's insurance policies. See Buss v. Superior Court, 16 Cal. 4th 35, 45 (1997) ("The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved.").[7]

For similar reasons, the Court also finds that indemnification is precluded by Cal. Ins. Code § 533. Signal contends that § 533 does not bar coverage based only on "an intent to commit the act that ultimately causes the harm (such as an intent to copy or emulate designs in the fashion industry, without a specific intent to infringe another's rights)." Signal's Opp. at 16. However, even the case that Signal cites as support for this proposition, Reshamwalla v. State Farm Fire & Cas. Co., 112 F. Supp. 2d 1010 (E.D. Cal. 2000) aff'd, 72 F. App'x 543 (9th Cir. 2003), states: "'A 'wilful act' under section 533 will include either an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result.'" Id. at 1021 (quoting Downey Venture v. LMI Ins. Co., 66 Cal. App. 4th 478, 500 (1998)). Here, the Gucci Order establishes that Signal intentionally infringed Gucci's trade dress rights "with knowledge that damage is highly probable or substantially certain to result.'" As such, coverage is also barred by Cal. Ins. Code § 533.

### B. Signal's Motion for Partial Summary Judgment as to the Duty to Defend

Signal seeks partial summary judgment that, among other things, Zurich and American Guarantee breached their duty to defend Signal in the Gucci action. Because the Gucci action was, at its inception, at least potentially covered by the Zurich and American Guarantee policies, Zurich and American Guarantee had a duty to defend Signal. See generally Croskey, Heesman & Imre, Cal. Practice Guide: Insurance Litig. §

---

[7] At the hearing held on December 19, 2013, counsel for Signal argued that policy exclusions only preclude coverage if the exclusion applies on all possible interpretations of the facts. This appears to overstate the scope of the duty to indemnify, as set forth in Buss, 16 Cal. 4th at 45. It appears that counsel may have instead been discussing the scope of the duty to defend, which is broader than the duty to indemnify. See id. at 46 ("By contrast, the insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

7:501 (The Rutter Group 2013). Zurich and American Guarantee owed Signal this duty to defend even though they are not responsible for indemnifying Signal for the final judgment in the Gucci action. See id. Furthermore, Signal was entitled under California law to select its own independent counsel.[8] This is so because the conduct of Signal's defense could have had implications for Signal's coverage under its insurance policies. The cost of paying this independent counsel is borne by the insurer. See id. §7:769.

Signal advances two arguments for why Zurich and American Guarantee breached their duty to defend. First, Signal submitted invoices for defense costs to Zurich and American Guarantee, and the insurance companies have not yet reimbursed Signal for these invoices. In response, Zurich and American Guarantee do not deny that they are required to reimburse Signal. Instead, Zurich and American Guarantee contend that they have reason to believe that the particular invoices submitted by Signal do not represent Signal's defense costs. Rather, these invoices may reflect Guess's defense costs, which Signal may be required to itself reimburse pursuant to a separate agreement between Signal and Guess. In light of this possibility, Zurich and American Guarantee contend that Signal has not yet demonstrated that the submitted invoices correspond to insurable defense costs, or that the refusal to pay these invoices breached the duty to defend.

Second, Signal argues that Zurich and American Guarantee breached their duty to defend by rejecting Signal's chosen counsel. Signal was represented by the firms of O'Melveny & Myers("O'Melveny") and Steptoe & Johnson ("Steptoe"). Signal contends that, when it presented its chosen counsel to Zurich and American Guarantee, they improperly rejected O'Melveny on the grounds that it suffered from a conflict arising from O'Melveny's simultaneous representation of Guess. Similarly, Signal contends, Zurich and American Guarantee rejected Steptoe on the grounds that they were not responsible for paying two separate law firms to conduct Signal's defense. Zurich and American Guarantee respond by arguing (1) that they did not reject O'Melveny and (2) that they were correct to reject Steptoe because California law imposes no duty to pay more than one independent counsel. With respect to both of Signal's arguments that they breached their duty to defend, Zurich and American Guarantee argue that they have not

---

[8] This independent counsel is also known as a Cumis counsel. See San Diego Navy Fed. Credit Union v. Cumis Ins. Society, Inc., 162 Cal. App. 3d 538 (1984).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

O

yet had the opportunity to conduct discovery that may uncover information which would justify their opposition to Signal's motion. They accordingly request that the Court deny or defer Signal's motion pursuant to Fed. R. Civ. P. 56(d).

After reviewing the parties' moving papers, as well as Signal's statement of undisputed facts, and defendants' separate statements of genuine disputes, the Court finds that it is appropriate to defer consideration of Signal's motion. The Court reaches this conclusion for two related reasons. First, Zurich and American Guarantee have not yet had the opportunity to conduct discovery in this matter. Due to the transfer of venue in this case, the parties did not hold their Rule 26(f) conference until October 28, 2013. Similarly, the initial scheduling conference in this case will be held concurrently with the hearing on the parties cross-motions for partial summary judgment. Accordingly, Zurich and American Guarantee could not rely on facts produced in discovery when preparing their opposition, which was filed on November 4, 2013. The unavailability of discovery counsels in favor of deferring consideration of Signal's motion. See, e.g., Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003) ("Where, however, a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely."); Wichita Falls Office Assoc. v. Banc One Corp., 978 F.2d 915, 919 n.4 (5th Cir. 1992) (Rule 56(f)-based "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.").

Second, it appears that further factual development may be appropriate to ensure that this Court's consideration of Signal's motion is based on a full understanding of the relevant facts. In particular, when an insurer delays paying defense-cost invoices tendered by an insured, the issue of whether that delay breaches the duty to defend may depend on the reasonableness of the insurer's delay. As the court in Pepsi-Cola Metro. Bottling Co. v. Ins. Co. of N. Am., Inc., 2010 U.S. Dist. LEXIS 144401 (C.D. Cal. Dec. 28, 2010), explained:

> [The insurer] argues that California law does not require that an insurer immediately pay defense costs for Cumis counsel without a proper investigation. Though there is some support for [the insurer's] argument,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

> the requirement that an insurer provide an "immediate" defense is not so easily satisfied that an insurer need only recognize its duty to defend an insured in a timely fashion and then engage in investigations in perpetuity. The insurer must actually defend its insured in a reasonably timely fashion, including by timely paying reasonable and necessary fees for Cumis counsel when appropriate. Although California law may not require an insurer to blindly pay unreasonable and unnecessary Cumis defense costs for obvious reasons, unreasonable delays are undoubtedly grounds for a breach of the insurer's duty to defend.

Id. at *17 (citing Intergulf Development v. Superior Court, 183 Cal. App.4th 16, 20 (2010)). Accordingly, Signal's motion turns, in part, on whether there is a genuine dispute of material fact underlying the reasonableness of Zurich and American Guarantee's investigation into the defense-cost invoices. However, Signal's statement of undisputed fact and defendants' separate statements of genuine disputes appear to leave outstanding questions about Signal's invoices and defendants' investigation into those invoices. In particular, Signal's statement of undisputed facts indicates that Signal initially tendered defense-cost invoices to Zurich and American Guarantee in September and October of 2010.[9] Signal's Statement of Uncontroverted Material Facts ¶ 56. However, Signal appears to base its claim that Zurich and American Guarantee breached their duty to defend on their alleged refusal to pay invoices tendered in July 2012. Id. ¶ 72. Neither Signal nor Zurich and American Guarantee explain what became of the initial 2010 invoices, or what, if anything, transpired during the intervening year.

Resolution of Signal's argument that Zurich and American Guarantee improperly rejected Signal's chosen independent counsel will similarly turn on undeveloped factual issues related to the course of Zurich and American Guarantee's investigation and Signal's response to that investigation. At the hearing held on December 19, 2013,

---

[9] Zurich and American Guarantee filed voluminous evidentiary objections to nearly every fact listed in Signal's statement of undisputed facts. Because the Court does not rule on the merits of Signal's motion, the Court declines to rule on these objections at this juncture.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-cv-04581-CAS-(AJWx) | Date | December 19, 2013 |
|---|---|---|---|
| Title | SIGNAL PRODUCTS, INC. V. AMERICAN ZURICH INSURANCE COMPANY ET AL. | | |

counsel for Signal argued that the Court could resolve Signal's argument that it was entitled to use multiple counsel without reference to further facts produced in discovery because Signal's motion only seeks a declaration that California law does not conclusively bar an insured from using multiple independent counsel. However, to the extent that Signal is requesting that this Court issue a pure statement of law, unconnected to the facts of this case, such a statement would constitute an improper advisory opinion. See Hall v. Beals, 396 U.S. 45, 48 (1969) (explaining the duty of federal courts "to avoid advisory opinions on abstract propositions of law"). Conversely, to the extent that Signal's argument requires this Court to apply California law to the facts of this case, it is important that those facts be fully developed. Accordingly, the Court finds that further discovery is appropriate before resolving these issues, and therefore defers consideration of Signal's motion for partial summary judgment.

## V. CONCLUSION

In accordance with the foregoing, the Court hereby GRANTS Zurich and American Guarantee's motion for partial summary judgment as to their duty to indemnify Signal. The parties shall meet and confer and submit a joint scheduling report no later than **January 10, 2014**. The Court CONTINUES Signal's motion for partial summary judgment on Zurich and American Guarantee's duty to defend, to a date to be determined after receipt of the parties joint report. In light of the conclusions reached herein, Signal's ex parte application to extend discovery deadlines, dkt. 145, is hereby DENIED as moot, and the stay on discovery deadlines issued on December 13, 2013, dkt. 150, is hereby vacated.

IT IS SO ORDERED.

| | 00 | : | 45 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |